# COMPOSITE EXHIBIT A

# FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner for the use of the Clerk of Court for the purpose of reporting judicial workload data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

## I.     CASE STYLE

IN THE CIRCUIT COURT OF THE <u>ELEVENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>   COUNTY, FLORIDA

Case No.: _____
Judge: _____

<u>Neiman Nix</u>
 Plaintiff
            vs.
<u>The Associated Press, Inc.</u>
Defendant

## II.     TYPE OF CASE

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence – other
  ☐   Business governance
  ☐   Business torts
  ☐   Environmental/Toxic tort
  ☐   Third party indemnification
  ☐   Construction defect
  ☐   Mass tort
  ☐   Negligent security
  ☐   Nursing home negligence
  ☐   Premises liability – commercial
  ☐   Premises liability – residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
  ☐   Commercial foreclosure $0 - $50,000
  ☐   Commercial foreclosure $50,001 - $249,999
  ☐   Commercial foreclosure $250,000 or more
  ☐   Homestead residential foreclosure $0 – 50,000
  ☐   Homestead residential foreclosure $50,001 - $249,999
  ☐   Homestead residential foreclosure $250,000 or more
  ☐   Non-homestead residential foreclosure $0 - $50,000
  ☐   Non-homestead residential foreclosure $50,001 - $249,999

☐   Non-homestead residential foreclosure $250,00 or more
☐   Other real property actions $0 - $50,000
☐   Other real property actions $50,001 - $249,999
☐   Other real property actions $250,000 or more

☐   Professional malpractice
  ☐   Malpractice – business
  ☐   Malpractice – medical
  ☐   Malpractice – other professional
☒   Other
  ☐   Antitrust/Trade Regulation
  ☐   Business Transaction
  ☐   Circuit Civil - Not Applicable
  ☐   Constitutional challenge-statute or ordinance
  ☐   Constitutional challenge-proposed amendment
  ☐   Corporate Trusts
  ☐   Discrimination-employment or other
  ☐   Insurance claims
  ☐   Intellectual property
  ☒   Libel/Slander
  ☐   Shareholder derivative action
  ☐   Securities litigation
  ☐   Trade secrets
  ☐   Trust litigation

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**III.    REMEDIES SOUGHT** (check all that apply):
☒    Monetary;
☒    Non-monetary declaratory or injunctive relief;
☒    Punitive

**IV.    NUMBER OF CAUSES OF ACTION: (    )**
(Specify)

3

**V.    IS THIS CASE A CLASS ACTION LAWSUIT?**
☐    Yes
☒    No

**VI.    HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
☒    No
☐    Yes – If "yes" list all related cases by name, case number and court:

**VII.    IS JURY TRIAL DEMANDED IN COMPLAINT?**
☒    Yes
☐    No

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature s/ Alex S. Hornik     FL Bar No.: 743895
        Attorney or party                                    (Bar number, if attorney)

Alex S. Hornik            03/13/2018
        (Type or print name)                                Date

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NUMBER: _____

**NEIMAN NIX** and
**DNA SPORTS PERFORMANCE LAB, INC.,**
a Florida corporation,

Plaintiff,

vs.

**ESPN, INC.**, a Connecticut corporation,
**THE ASSOCIATED PRESS, INC.** a New York
nonprofit cooperative, and **USA TODAY
INTERNATIONAL CORPORATION,**
a Delaware corporation.

Defendants.

_____/

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

**COME NOW** the Plaintiffs, NEIMAN NIX and DNA SPORTS PERFORMANCE LAB, INC.,

by and through their undersigned attorney, sue the Defendants, ESPN, INC., a Connecticut corporation,

THE ASSOCIATED PRESS, INC. a New York nonprofit cooperative, and USA TODAY

INTERNATIONAL CORPORATION**,** a Delaware corporation, and in support thereof states as follows:

1. This is an action for damages exceeding $15,000.00 exclusive of interest, costs, and attorney's

fees, and for injunctive relief, and is within the jurisdiction of the Court.

2. At all relevant times, DEFENDANT ESPN, INC. ("DEFENDANT ESPN") was a corporation

organized and existing under the laws of the state of Connecticut and transacting systematic business in

the state of Florida.

3. At all relevant times, DEFENDANT THE ASSOCIATED PRESS, INC., ("DEFENDANT AP")

was a not-for-profit news cooperative organized and existing under the laws of the state of New York and

authorized to transact business in the state of Florida and transacting systematic business in the state of

Florida.

4.    At all relevant times, DEFENDANT USA TODAY INTERNATIONAL CORPORATION ("DEFENDANT USA") was a corporation organized and existing under the laws of the state of Delaware and the publisher of a daily newspaper named "USA Today."

5.    DEFENDANTS are subject to the personal jurisdiction of this Court pursuant to Florida's Long-Arm Statute, Florida Statute Section 48.193(2), by virtue of having committed tortious acts within the state or which caused injury within the state.

6.    Venue is proper in Miami-Dade County, Florida since the causes of action sued upon arose here.

7.    All conduct on the part of PLAINTIFF DNA Sports Performance Lab, Inc**.** ("DNA") and DEFENDANTS as described herein was carried out by their duly authorized agents acting within the scope of their respective authority as such.

8.    Plaintiff Neiman NIX ("NIX") is a former professional baseball player selected straight out of high school in the 1998 Major League Draft by the Cincinnati Reds and later signed by Milwaukee Brewers. Unfortunately, NIX's career as a professional player was cut short by arm injuries, the widespread occupational hazard which had always plagued pitchers.

9.    Following NIX's retirement from professional baseball, he pursued various employment and business opportunities connected with the sport he loved and to which he had devoted his life. First he coached college baseball. His experience there led him to the realization that the standard training program used by colleges and universities needed to be updated and improved by an individualized and scientific methodology aimed at maximizing the potential of each player relative to particular skills and team positions. Over the next few years, NIX developed a better system of training based on his growing knowledge and experience in the fields of sports medicine and bio-mechanics.

10.    Drawing inspiration from years of detailed training, study, trial, and error in development of new pitching techniques, NIX conceived a new form of pitching. NIX then incorporated his new pitching

method into a complete system of biometric analysis, data collection, individualized training, and physical therapy which he developed in the expectation of teaching those aspiring to pitch professionally how to maximize their athletic performance while at the same time avoiding undue injury, rehabilitating injuries, and prolonging their active careers. NIX made use of various pieces of sophisticated equipment and computer programs as part of his diagnostic and training program, including a motion image tracking device showing baseball and fitness related movement in a computer generated, 3-D rotational animation and integrated with scientific data for purposes of his program.

11.   In 2006, NIX went into business for himself by opening a year-round training and development center for athletes aspiring to college or professional baseball careers. First located in Seattle, Washington, his American Baseball Institute provided his students with housing, individualized training and testing, intensive daily practice, and the opportunity for regular exposure to MLB and college scouts through open try-outs and exhibition games with minor league teams. NIX hired many former professional players and coaches to work as the camp's staff. The success of NIX's business outgrew its venue twice until it finally took over the former Philadelphia Phillies spring training stadium in Clearwater, Florida. Scouts from all thirty (30) MLB teams were deeply impressed with NIX's program. Their regular visits to his facility resulted in the signing of professional contracts for hundreds of his student prospects and contributed significantly to the growth of the baseball industry.

12.   The growth and financial potential of NIX's baseball training academy were largely lost, however, to an unforeseeable outside force. NIX's business reputation and connections in the baseball community had been damaged by the malicious investigatory methods of Major League Baseball ("MLB") employed in its heavy-handed and unfounded inquiry into allegations of improprieties in the operation of NIX's business. As a result, was forced to sell ninety per cent (90%) of his stock in American Baseball Institute in late 2011.

13.   NIX launched a new business in the form a state-of-the-art sports science center in Miami Beach,

Case 1:18-cv-22208-UU Document 1-2 Entered on FLSD Docket 06/04/2018 Page 7 of 62
NIX and DNA SPORTS PERFORMANCE LAB, INC. vs ESPN, AP, and USA TODAY
CASE NUMBER:_____

Florida in April of 2012. Named "DNA Sports Performance Lab, Inc.", the co-plaintiff herein, DNA provided diagnostic sports training and fitness testing services in addition to selling health supplements made from the certain substances extracted from the shed tissue of elk antlers, also known as "deer antler velvet". There were two, complimentary sides to DNA's sports science business. On the one hand, DNA offered the use of sophisticated equipment and techniques to scientifically analyze each client's particular physical and physiological profile to determine what regimen of exercise, training, nutrition, and supplements to recommend, and then worked closely with that client to implement that program. The other part of DNA's business was the sale of health supplements manufactured to the highest clinical standards and commonly referred to as "bio-identical compounds" or "nutraceuticals"

14. DNA sells one such prominent form which is derived from the humanely-harvested antler tissue naturally shed by elk, one of the largest species in the deer family, as part of their annual, antler molting and regeneration process. This substance has been used in Chinese medicine for centuries as a cure and treatment for various chronic diseases as well as a tonic and energizer. Deemed safe and effective, and available without a doctor's prescription, the antler extract is formulated into natural, non-steroid supplements which can legitimately be claimed to increase physical strength, enhance athletic performance, increase energy levels, retard the aging process, sharpen memory and concentration, rejuvenate the libido, and provide many other health benefits.

15. The line of products derived from antler tissue and sold by DNA has never been prohibited by the Worldwide Anti-Doping Agency (WADA), an international independent agency founded in 1999 to combat the use of performance enhancing substances in sports. Neither NIX nor DNA has ever sold or even recommended the use of anabolic steroids, commonly known as performance enhancing drugs ("PEDS"). The formulas they developed were designed as natural and safe alternatives to PEDS. The sports world has had a well-publicized problem with PEDS for many years now. DNA's business philosophy was in the opposite direction, advocating against the use of such illegal substances. The mission of DNA, as

its name implies, is to maximize an athlete's innate physical potential through the application of medically and scientifically sound and safe principles and methods. The active ingredient in the supplements developed and sold by NIX and DNA is a naturally occurring, bio-identical form of IGF-1 which is found in foods such as milk, meat, fish, whey protein, and in the human body. NIX never tried to sell or market these natural performance supplements to any MLB players on account of a non-competition agreement with the purchasers of his former interest in American Baseball Institute.

16. Nevertheless, NIX was the target of a second, misbegotten investigation of MLB in the first half of 2013 falsely accusing him of selling illegal performance enhancing drugs to MLB players. MLB's focus on NIX and DNA was part of its larger crusade to rid the sport of the perceived widespread use of such drugs. Prompted by the scandal created by the association of several prominent MLB players, including Alex Rodriguez, with South Florida's "Biogenesis Clinic", MLB investigated into every anti-aging clinic in the state in order to try to polish its own image and included DNA in its sights.

17. Again resorting to recklessly incriminating tactics which created the impression of guilt in the minds of those it contacted, MLB's investigators posed as FBI and DEA officials and questioned NIX's clients and colleagues. Not one shred of evidence was ever uncovered proving that NIX or DNA sold any illegal substance to any MLB player or that any MLB player ever tested positive for any product sold by NIX. But the bullying tactics used by MLB's agents in trying to elicit the damning evidence had the effecting of planting enough doubt to cause great harm. NIX's business reputation was again dragged through the mud without any credible basis and NIX again suffered an economic blow to a growing business with great promise on account of MLB's malicious and slanderous campaign of blame against an honest and dedicated entrepreneur.

18. NIX and DNA filed suit for tortious interference in July of 2016 in Federal Court, Southern District of New York, Case Number 1:16-cv-05604 to redress the devastating economic harm and personal offenses they suffered at their hands of MLB in the course of the two groundless investigations into alleged

wrongdoing it rationalized on the thinnest of leads. Reporting on this lawsuit the very same day it was filed, DEFENDANTS ESPN and USA each disseminated a news article on July 14, 2016 which had been authored DEFENDANT AP, and which contained the following statement: "**The suit admits Nix and his company used bioidentical insulin like growth factor (IGF-1), which is derived from elk antlers and is on baseball's list of banned substances.**" These articles can be found athttp://www.espn.com/mlb/story/_/id/17078668/major-league-baseball-sued-dna-sports-performance-lab-owner-alleged-illegal-hacking-biogenesis-investigation and https://www.usatoday.com/story/sports/mlb/2016/07/14/training-clinic-owner-sues-mlb-alleging-illegal-hacking/87096478/.

19.    The clear meaning and import of this statement is that NIX and DNA peddled illegal drugs to professional baseball players and that they admitted so in the context of their lawsuit.

20.    This statement is false in both its literal expression, as well as in the innuendos it creates.

21.    The complaint in the lawsuit cited by the offending statement specifically alleges the following:

A.    Naturally occurring, bio-identical IGF-1, extracted from the antlers of elk and deer, is not a controlled or illegal substance.

B.    The use of naturally occurring, bio-identical IGF-1, extracted from the antlers of elk and deer, is not prohibited by MLB or MLB Player's Association.

C.    Naturally occurring, bio-identical IGF-1 is also found in milk, meat, fish, whey protein, and in every human body.

D.    Neither NIX nor DNA ever sold any extracts or compounds derived from elk or deer antlers to any MLB players.

E.    Extracts from elk or deer antlers are not considered illegal by the U.S. Drug Enforcement Agency (DEA) nor are these banned by the World Anti-Doping Agency (WADA). A deposition transcript from WADA's head science director stating that deer antler has never been banned can be found

Case 1:18-cv-22208-UU   Document 1-2   Entered on FLSD Docket 06/04/2018   Page 10 of 62
NIX and DNA SPORTS PERFORMANCE LAB, INC. vs ESPN, AP, and USA TODAY
CASE NUMBER:_____

at:https://iapps.courts.state.ny.us/nyscef/ViewDocument?docIndex=uTt5RNTq/BtWZtZfCjZJ
ow==.

22.    The offending statement is highly defamatory since it confuses the critical distinction between the natural and synthetic forms of IGF-1. The term "bio-identical" means natural, non-synthetic, and non-altered, just as NIX's federal complaint describes it. All animal products are considered natural. They are completely different from lab-made, synthetic drugs which are classified by the U.S. Drug Enforcement Agency as Schedule III substances. Animal derived products are consumed by every human being and have never been considered banned substances under any definition. The synthetic form of IGF-1 is a Schedule III illegal drug in the same category as cocaine and methamphetamine. The penalty for selling Schedule III illegal drugs can be 10 years in prison. The offending statement is defamatory in a second sense by suggesting that NIX, a former MLB player himself, and DNA, sold substances banned by MLB rules to MLB players, even if they were not controlled or illegal substances *per se.*

23.    DEFENDANTS' statement clearly implies that NIX and DNA sold illegal drugs, or legal drugs in an illegal manner, and has damaged their respective reputations for integrity and honesty.

24.    DEFENDANTS publicized the offending statement to their readership when each of them knew, or clearly should have known, it was literally false and/or false by implication. MLB has never stated that deer or elk antler extract is a prohibited or banned substance. On the contrary, MLB has deferred to WADA on this subject and WADA has upheld its use. And PLAINTIFFS' lawsuit certainly does not admit to the contrary.

25.    The MLB Players Association ("MLBPA"), the collective bargaining representative for all MLB players, sent a memo authored and signed by its general counsel, Bob Lenaghan, to all of its members in July of 2011 warning them that one particular brand of deer-antler spray mentioned in the memo may contain synthetic steroid substances that will cause a positive drug test in the user.

https://iapps.courts.state.ny.us/nyscef/ViewDocument?docIndex=sFgd/JuIzyC9Dx5wCRuJ9Q==. The product was called "The Ultimate Sports Spray" and was manufactured by "Sports With Alternatives To Steroids", also known as "S.W.A.T.S". The memo identifies NFL player David Vobora as having tested positive for the synthetic steroid, Methyltestosterone, after using this deer-antler spray. But the memo does not prohibit the use of deer-antler products in general. The memo goes on to state that supplements certified to be free of banned substances can be identified by reference to a list found online (www.nsfsport.com) and that this list is periodically updated. The collective bargaining agreement between the commissioners of MLB and its players refers to WADA for all drug testing and for the authoritative identification of all banned substances. Deer and elk antler have never been listed among them.

26.   On December 6th, 2016 David Vobora was sued by a former shareholder of S.W.A.T.S. in Federal Court, Eastern District of Missouri, in case number 4:16-cv-01895-RWS. The suit is based on accusations that Mr. Vobora intentionally contaminated an open bottle of the product with Methlytestosterone as part of a scheme to concoct a fraudulent claim against the company. Deliberating causing himself to fail an NFL drug test which he blamed on the product, Mr. Vobora then recovered a default judgment in the amount of $5,400,588 against S.W.A.T.S. for his resulting 2009 suspension. This default judgment is what the MLBPA memo refers to when it says David Vobora successfully sued this company. The complaint to overturn this default judgment alleges that samples of this product from the same lot as the one associated with the sample David Vobora purportedly used were tested and found to be negative. Other pro athletes, including MLB players who allegedly used the product from the same lot, were likewise all found be free of the banned synthetic steroid. The complaint confirms PLAINTIFFS' position that Methyltestosterone is a "manufactured synthetic compound not found in nature, ...it is an anabolic steroid...and a controlled substance... and that in 2013 the World Anti-Doping Agency removed deer antler velvet from its list of banned substances." The default was upheld by the court on purely procedural grounds.

27.   DEFENDANTS had only to fact-check their story against the lawsuit complaint to which it refers

Case 1:18-cv-22208-UU  Document 1-2  Entered on FLSD Docket 06/04/2018  Page 12 of 62
NIX and  DNA SPORTS PERFORMANCE LAB, INC. vs ESPN, AP, and USA TODAY
CASE NUMBER:_____

to know the offending statement was false.

28.    Even more egregious is an article published by DEFENDANT ESPN on May 1, 2013 in which this news organization itself stated, "the PGA Tour followed up with the World Anti-Doping Agency which told the tour it no longer considered deer-antler velvet and IGF-1 a prohibited substance." http://www.espn.com/blog/playbook/dollars/post/_/id/3414/big-break-for-deer-antler-velvet. In spite of DEFENDANT ESPN's position on this issue, MLB saw fit to use the offending article in support of its motion to dismiss NIX's New York lawsuit against MLB for tortious interference and slander. MLB has a multi-billion dollar broadcasting agreement with DEFENDANT ESPN and is advocating DEFENDANT ESPN's unfounded and defamatory position in its defense of PLAINTIFFS' slander claim against MLB.

29.    DEFENDANTS' offending article was similarly used as the basis to falsely discredit PLAINTIFFS during their deposition in a recent lawsuit between PLAINTIFFS and an upscale fitness center chain arising out of a business agreement which allowed PLAINTIFFS to expand their sports science centers to three locations in Manhattan. In this case, PLAINTIFFS were specifically asked about, and vehemently denied, the report in the offending article that they sold banned substances to MLB players and others.

30.    DEFENDANTS AP and USA have also both reported previously that natural IGF-1 in the form of deer antler is not a banned substance as related articles can be found from the AP: http://www.golf.com/ap-news/tour-drops-its-doping-case-against-vijay-singh, http://www.golf.com/ap-news/singh-suing-pga-over-proposed-suspension, http://www.pga.com/news/golf-buzz/vijay-singh-turns-back-time-in-hunt-players. From DEFENDANT USA:
https://www.usatoday.com/story/sports/golf/2014/02/18/golf-vijay-singh-gets-key-ruling-in-lawsuit-against-pga-tour/5595085/.

31.    On December 26, 2017, PLAINTIFFS demanded that DEFENDANTS AP and ESPN print a

Case 1:18-cv-22208-UU Document 1-2 Entered on FLSD Docket 06/04/2018 Page 13 of 62
NIX and DNA SPORTS PERFORMANCE LAB, INC. vs ESPN, AP, and USA TODAY
CASE NUMBER:_____

retraction of the offending article, but they flatly refused and gave as their reason, " IGF-1 appears at entry number 68 on MLB's 'Prohibited Substance List.' In addition, MLB confirmed to the AP that 'all natural, synthetic and bioidentical versions of any prohibited substances -- including, but not limited to, IGF-1 -- are considered banned.' "

32.    The MLB prohibited list reads in relevant part: "Section B. Performance Enhancing Substances it: Any and all anabolic androgenic steroids covered by Schedule III of the Code of Federal Regulations' Schedule of Controlled Substances ("Schedule III"), as amended from time to time, and the categories of hormones and agents with antiestrogenic activity that are set forth in Nos. 67 - 74 below, shall be considered Performance Enhancing Substances covered by the Program. Anabolic androgenic steroids, hormones, and agents with antiestrogenic activity, that may not be lawfully obtained or used in the United States (including, for example, "designer steroids" and peptide hormones) also shall be considered Performance Enhancing Substances irrespective of whether they are covered by Schedule III. The following is a non-exhaustive list of substances that shall be considered Performance Enhancing Substances covered by the Program.."

(https://iapps.courts.state.ny.us/nyscef/ViewDocument?docIndex=D7u_PLUS_cyMCZNOEbsgpZYcj9 Q==). Elk and deer antler have never been declared a Schedule III drug and have always been available for lawful purchase without a prescription in the United States.

33.    All conditions precedent to the institution of  this lawsuit have been performed, have occurred, or have been excused.

34.    PLAINTIFFS have retained the undersigned attorney to represent them in this matter, and are obligated to pay a reasonable fee for the undersigned attorney's services.

## COUNT I
## DEFAMATION

35.    PLAINTIFFS repeat and re-allege paragraph 1 through 34 of this Complaint as though fully set out as the same numbered paragraphs of Count I, and further states as follows:

36.  DEFENDANTS, and each of them, widely disseminated false and defamatory assertions and innuendos of fact concerning both PLAINTIFFS through their respective mass publications of the subject material.

37.  DEFENDANTS' false and defamatory statement impugned the business and professional integrity of both PLAINTIFFS by portraying them as knowingly marketing and selling banned performance enhancing substances, and have thereby subjected PLAINTIFFS to hatred, distrust, ridicule, contempt, and/or disgrace.

38.  DEFENDANTS, and each of them, knew or should have known these assertions and innuendos were false at the time they were made through the respective publications and re-publications.

39.  DEFENDANTS, and each of them, acted with the express intention of injuring PLAINTIFFS' reputations in the business community by publishing statements known to be false or in reckless disregard of their potential falsity.

40.  DEFENDANTS, and each of them, acted with actual, express malice.

41.  As a direct, proximate, and foreseeable result of these false, malicious, and defamatory statements to third-parties about PLAINTIFFS, PLAINTIFFS have been greatly damaged, and continue to be damaged to this very day.

42.  PLAINTIFFS' damages include but are not limited to past, present, and future loss of business contracts, income, profits, market value, opportunities, and relationships.

43.  PLAINTIFF NIX has also suffered and continues to suffer mental anguish, humiliation, and emotional distress.

44.  PLAINTIFFS reserve the right pursuant to Florida Statute Section 768.72 to claim punitive damages in this matter on account of DEFENDANTS' gross and uncivilized misconduct in taking action known to be wrongful and injurious to PLAINTIFFS or in reckless disregard of the high probability of injury to PLAINTIFFS.

**WHEREFORE**, PLAINTIFFS, as their interests appear, demand judgment against DEFENDANTS, jointly and severally, for compensatory damages, punitive damages, costs, attorney's fees, and any other relief deemed just and proper by the Court.

## COUNT II
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

45.    PLAINTIFFS repeat and re-allege paragraph 1 through 34 of this Complaint as though fully set out as the same numbered paragraphs of Count II, and further state as follows:

46.    The actions and intentions of DEFENDANTS in publishing knowingly or recklessly false and defamatory statements clearly calculated to damage the good name and reputation of PLAINTIFFS by portraying them as peddlers of illegal drugs are so outrageous, uncivilized, and intolerable as to justify the imposition of monetary liability for its foreseeable psychological injuries.

47.    NIX has in fact suffered and continues to suffer extreme emotional distress, mental anguish, humiliation, depression, and associated ailments and symptoms as a direct consequence of DEFENDANTS' willful, wanton, and malicious actions. NIX has suffered such great emotional distress over the destruction of his good name that is considering legally changing it and the name of DNA to escape further opprobrium from the unwarranted association with any illicit or unsavory activities.

48.    PLAINTIFFS reserve the right to pursuant to Florida Statute Section 768.72 to claim punitive damages in this matter on account of DEFENDANTS' gross and uncivilized misconduct in taking action known to be wrongful and injurious to PLAINTIFFS or in reckless disregard of the high probability of injury to PLAINTIFFS.

**WHEREFORE**, PLAINTIFFS, as their interests appear, demand judgment against DEFENDANTS, jointly and severally, for compensatory damages, punitive damages, costs, attorney's fees, and any other relief deemed just and proper by the Court.

## COUNT III
## TEMPORARY AND PERMANENT INJUNCTION

49.  PLAINTIFFS repeat and re-allege paragraphs 1 through 31 of this Complaint as though fully set out as the same numbered paragraphs of Count III, and further states as follows:

50.  This is an action for temporary and permanent injunctive relief.

51.  The offending article was published and re-republished online by DEFENDANTS and will continue to be disseminated online and live in perpetuity unless affirmative action is by DEFENDANTS to remove and/or to retract it from all sites in which it appears.

52.  PLAINTIFFS demanded the removal and/or retraction of the subject article by letter December 26, 2017, but DEFENDANTS have thus far failed and refused to comply with PLAINTIFFS' request.

53.  PLAINTIFFS have no adequate remedy at law and will suffer irreparable harm and injury on account of the present or future publication of the subject article unless this Court issues an immediate temporary and permanent injunction enjoining DEFENDANTS from any continued publication, republication, or other dissemination of their false and defamatory article, requiring DEFENDANTS to post an appropriate retraction of the offending statement, and to remove to the subject article from the internet and any other media where it is found.

54.  The harm to the DEFENDANTS in granting the requested injunctions is slight compared to the adverse consequences to PLAINTIFFS if the injunctions are not granted.

55.  It serves the greater good to enjoin DEFENDANTS temporarily and permanently from any further defamation of PLAINTIFFS.

**WHEREFORE** PLAINTIFFS, as their interests appear, pray for the foregoing injunctive relief against DEFENDANTS and their officers, agents, servants, employee, and attorneys, attorneys fees, costs, and any other relief deemed just and proper by the Court.

## DEMAND FOR JURY TRIAL

56.  PLAINTIFFS hereby demand a jury trial on all issues so triable as a matter of right.

# VERIFICATION

I, NEIMAN NIX, declare that I have read the foregoing Verified Complaint, and hereby certify that the facts stated therein are true and correct to the best of my knowledge and belief.

_____
NEIMAN NIX

STATE OF TEXAS )
COUNTY OF _Harris_ ) ss

ACKNOWLEDGED, SWORN TO, and SUBSCRIBED to this day by NEIMAN NIX to me known to be the person described in and who executed the foregoing Verified Complaint and who produced his Florida Driver's License as identification.

WITNESS my hand and official seal this _5_ day of March, 2018.

NIX and DNA SPORTS PERFORMANCE LAB, INC. vs ESPN, AP, and USA TODAY
CASE NUMBER:_____

My Commission Expires:

NOTARY PUBLIC Sign

Print: _Tristen Soulsby - monroy_  State of Texas at Large

TRISTAN SOULSBY-MONROY
Notary Public, State of Texas
My Commission Expires
April 24, 2019

LAW OFFICE OF ALEX S. HORNIK, P.A.

Attorney for Plaintiffs   1900 S. Treasure Drive, Suite #9-H   North Bay Village, Florida 33141 Telephone: (786) 275-6850   Facsimile: (786) 453-2360   Primary email : ahornik@horniklaw.com Secondary email : alexhornik1@gmail.com By: /s/ Alex S. Hornik, Esq.   FBN 743895

Scanned by CamScanner

**LAW OFFICE OF ALEX S. HORNIK, P.A.**

Attorney for Plaintiffs
1900 S. Treasure Drive, Suite #9-H
North Bay Village, Florida 33141
Telephone: (786) 275-6850
Facsimile: (786) 453-2360
Primary email : ahornik@horniklaw.com
Secondary email : alexhornik1@gmail.com
By: /s/ Alex S. Hornik, Esq.
FBN 743895

IN THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL   JURISDICTION   DIVISION

CASE NUMBER: 18-007998 CA (01)

**NEIMAN NIX** and
**DNA SPORTS PERFORMANCE LAB, INC.,**
a Florida corporation,

    Plaintiffs,

vs.

**ESPN, INC.**, a Connecticut corporation,
**THE ASSOCIATED PRESS, INC.** a New York
nonprofit cooperative, and **USA TODAY
INTERNATIONAL CORPORATION,**
a Delaware corporation.

    Defendants.

_____/

**THE SHERIFF OF FLORIDA:**
**To each Sheriff of the State:**

YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this action on
Defendant:

**THE ASSOCIATED PRESS, INC.**
By serving its Registered Agent:
Corporation Service Company
80 State Street
Albany, NY 12207-2543

Each Defendant is required to serve written defenses to the Complaint on Plaintiff's attorney, ALEX S.
HORNIK, ESQ., LAW OFFICE OF ALEX S. HORNIK, P.A., whose address is 1900 S. Treasure Drive,
Suite #9-H, North Bay Village, Florida, 33141(Telephone: 786-275-6850, Fax: (786) 453-2360) within
**twenty (20)** calendar days of the service of this Summons on that Defendant, exclusive of the day of
service, and to file the original of the defenses with the Clerk of the Court either before service on
Plaintiffs' attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against
that Defendant for the relief demanded in the Complaint.

Dated on     3/30/2018
_____

                               HARVEY RUVIN
                               Clerk of Court

                               *Gonelle Brown* 164659
                        By_____
                                As Deputy Clerk

IN THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL   JURISDICTION   DIVISION

CASE NUMBER: 18-007998 CA (01)

**NEIMAN NIX** and
**DNA SPORTS PERFORMANCE LAB, INC.,**
a Florida corporation,

     Plaintiffs,

vs.

**ESPN, INC.**, a Connecticut corporation,
**THE ASSOCIATED PRESS, INC.** a New York
nonprofit cooperative, and **USA TODAY
INTERNATIONAL CORPORATION,**
a Delaware corporation.

     Defendants.

_____/

**THE SHERIFF OF FLORIDA:**
**To each Sheriff of the State:**

YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this action on
Defendant:

**ESPN, INC.**
By serving its Registered Agent:
ESPN Enterprises, Inc.
ESPN Plaza, Attn: Legal Dept.
Bristol, CT, 06010-7454

Each Defendant is required to serve written defenses to the Complaint on Plaintiff's attorney, ALEX S.
HORNIK, ESQ., LAW OFFICE OF ALEX S. HORNIK, P.A., whose address is 1900 S. Treasure Drive,
Suite #9-H, North Bay Village, Florida, 33141(Telephone: 786-275-6850, Fax: (786) 453-2360) within
**twenty (20)** calendar days of the service of this Summons on that Defendant, exclusive of the day of
service, and to file the original of the defenses with the Clerk of the Court either before service on
Plaintiffs' attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against
that Defendant for the relief demanded in the Complaint.

Dated on_____3/30/2018_____

HARVEY RUVIN
Clerk of Court

By___*Gonelle Brown* 164659_____
    As Deputy Clerk

Case 1:18-cv-22208-JJJ Document 1-2 Entered on FLSD Docket 06/04/2018 Page 21 of 62

IN THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL   JURISDICTION   DIVISION

CASE NUMBER: 18-007998 CA (01)

**NEIMAN NIX** and
**DNA SPORTS PERFORMANCE LAB, INC.,**
a Florida corporation,

    Plaintiffs,

vs.

**ESPN, INC.**, a Connecticut corporation,
**THE ASSOCIATED PRESS, INC.** a New York
nonprofit cooperative, and **USA TODAY
INTERNATIONAL CORPORATION,**
a Delaware corporation.

    Defendants.

_____/

**THE SHERIFF OF FLORIDA:**
**To each Sheriff of the State:**

YOU ARE COMMANDED to serve this Summons and a copy of the Complaint in this action on Defendant:

**USA TODAY INTERNATIONAL CORPORATION**
By serving its Registered Agent:
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Each Defendant is required to serve written defenses to the Complaint on Plaintiff's attorney, ALEX S. HORNIK, ESQ., LAW OFFICE OF ALEX S. HORNIK, P.A., whose address is 1900 S. Treasure Drive, Suite #9-H, North Bay Village, Florida, 33141(Telephone: 786-275-6850, Fax: (786) 453-2360) within **twenty (20)** calendar days of the service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of the Court either before service on Plaintiffs' attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

Dated on  3/30/2018
_____

HARVEY RUVIN
Clerk of Court

By Gonelle Brown  164659
_____
As Deputy Clerk

THE ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NUMBER: 18-007998 CA (01)

**NEIMAN NIX** and
**DNA SPORTS PERFORMANCE LAB, INC.,**
a Florida corporation,

      Plaintiff,

vs.

**ESPN, INC.,** a Connecticut corporation,
**THE ASSOCIATED PRESS, INC.** a New York
nonprofit cooperative, and **USA TODAY
INTERNATIONAL CORPORATION,**
a Delaware corporation.

      Defendants.

_____/

## PLAINTIFFS' FIRST REQUEST TO PRODUCE
(To All Defendants)

    **COME NOW** the PLAINTIFFS, by and through their undersigned attorney, and pursuant to Rule

1.350 of the Florida Rules of Civil Procedure, requests that each DEFENDANT produce the following

documents and other papers at the Law Office of Alex S. Hornik, P.A., 1900 S. Treasure Drive, Suite #9-

H, North Bay Village, Florida 33141, within the time prescribed under the Florida Rules of Civil

Procedure, and permit PLAINTIFFS to inspect and copy these documents.

    **"Documents"** shall mean any correspondence, writing, computer-stored, computer-generated,
electronic, or graphic material or any copy of any writing, electronic or graphic material in your possession,
custody, care, or control pertaining to any subject, involved in this proceeding. This includes but is not
limited to, the original of any correspondence, paper, book, pamphlet, periodical, photograph, object,
microfilm, microfiche, note, sound recording, sales pamphlets, materials, or sales information, or any other
data compilation from which information can be obtained within the time prescribed under the Florida
Rules of Civil Procedure:

## DOCUMENTS REQUESTED

1.    Any and all documents, correspondence, memoranda, emails, text-messages, or other written
communications between any of the parties to this case, mentioning, referring to, or pertaining to
any of the issues, allegations, or subject matter of this case.

2.   Any and all documents, correspondence, memoranda, emails, text-messages or other written communications between any of the parties to this case and any person or entity not a party to this case mentioning, referring to, or pertaining to any of the issues, allegations, or subject matter of this case.

3.   Any and all internal documents, correspondence, memoranda, emails, text-messages or other written communications of each DEFENDANT herein mentioning, referring to, or pertaining to any of the issues, allegations, or subject matter of this case.

4.   Any and all documents, records, correspondence or other writings supporting, refuting, mentioning, or pertaining to the following statements:

     A.   Bioidentical insulin like growth factor (IGF-1) is on MLB's list of banned substances.

     B.   Bioidentical insulin like growth factor (IGF-1) is derived from elk antlers and is on MLB's list of banned substances.

     C.   Plaintiff Nix admitted that in his 2016 lawsuit against MLB that his company used Bioidentical insulin like growth factor (IGF-1) which is derived from elk antlers and is on MLB's list of banned substances.

5.   Any and all documents, records, correspondence or other writings supporting, refuting, mentioning, or pertaining to Major League Baseball's position on the use of deer or elk antler supplements by its players.

6.   Any and all documents, records, correspondence or other writings which each DEFENDANT relied on as the basis for the statement, ""The suit admits Nix and his company used bioidentical insulin like growth factor (IGF-1), which is derived from elk antlers and is on baseball's list of banned substances."

7.   Any and all documents, records, correspondence or other writings evidencing, mentioning, or pertaining to each DEFENDANT's responses to PLAINTIFFS' First Set of Interrogatories and First Requests for Admissions filed concurrently herewith.

8.   Copies of any and all insurance policies in their entirety which insure any DEFENDANT for any legal liability to third parties for the year 2016.

9.   Any and all documents, correspondence, writings, or exhibits which DEFENDANT intends to introduce at the trial in this matter, whether for substantive, rebuttal, or impeachment purposes.

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was emailed to Carol Jean

LoCicero, Esq, Thomas & LoCicero PL, attorneys for Defendant THE ASSOCIATED PRESS at

*clocicero@tlolawfirm.com* this 23rd day of April, 2018.

- Page 2 of 3 -

**LAW OFFICE OF ALEX S. HORNIK, P.A.**
Attorney for Plaintiff
1900 S. Treasure Drive, Suite #9-H
North Bay Village, Florida 33141
Telephone:          (786) 275-6850
Facsimile:          (786) 453-2360
Primary email : ahornik@horniklaw.com
Secondary email : alexhornik1@gmail.com

By: /s/ Alex S. Hornik, Esq.
       FBN 743895

IN THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NUMBER: _____

**NEIMAN NIX** and
**DNA SPORTS PERFORMANCE LAB, INC.,**
a Florida corporation,

     Plaintiff,

vs.

**ESPN, INC.**, a Connecticut corporation,
**THE ASSOCIATED PRESS, INC.** a New York
nonprofit cooperative, and **USA TODAY
INTERNATIONAL CORPORATION,**
a Delaware corporation.

     Defendants.

_____/

## PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS
(To All Defendants)

**COME NOW** the PLAINTIFFS, by and through their undersigned attorney, and pursuant to Rule

1.370 of the Florida Rules of Civil Procedure, requests that each DEFENDANT admit or deny the

following statements within the time prescribed under the Florida Rules of Civil Procedure:

1.    Defendant did not review Plaintiffs' complaint in the lawsuit to which the following statement refers before publishing the article containing it: "The suit admits Nix and his company used bioidentical insulin like growth factor (IGF-1), which is derived from elk antlers and is on baseball's list of banned substances."

2.    Bioidentical insulin like growth factor (IGF-1) is not on MLB's list of banned substances.

3.    Extracts from deer and elk antlers are not on MLB's list of banned substances.

4.    Plaintniff Nix never admitted in his 2016 lawsuit against MLB that his company used or sold any substance banned by MLB.

5.    Neither Plaintiff ever admitted having sold any substance banned by MLB

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true and correct copy of the foregoing was forwarded to the process server for service on Defendants this ___ day of March, 2018.

                        **LAW OFFICE OF ALEX S. HORNIK, P.A.**
                           Attorney for Plaintiff
                           1900 S. Treasure Drive, Suite #9-H
                           North Bay Village, Florida 33141
                           Telephone:      (786) 275-6850
                           Facsimile:       (786) 453-2360
                           Primary email : ahornik@horniklaw.com
                           Secondary email : alexhornik1@gmail.com

                           By: /s/ Alex S. Hornik, Esq.
                              FBN 743895

IN THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NUMBER: 18-007998 CA (01)

**NEIMAN NIX** and
**DNA SPORTS PERFORMANCE LAB, INC.**,
a Florida corporation,

     Plaintiff,

vs.

**ESPN, INC.**, a Connecticut corporation,
**THE ASSOCIATED PRESS, INC.** a New York
nonprofit cooperative, and **USA TODAY
INTERNATIONAL CORPORATION,**
a Delaware corporation.

     Defendants.

_____/

## PLAINTIFFS' NOTICE OF SERVICE OF FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS

     Plaintiff, **NEIMAN NIX**, by and through his undersigned attorney, hereby gives notice of the

service of his First Set of Interrogatories on all Defendants pursuant to Rule 1.340 of the Florida Rules of

Civil Procedure

## CERTIFICATE OF SERVICE

     **I HEREBY CERTIFY** that a true and correct copy of the foregoing was emailed to Carol Jean

LoCicero, Esq, Thomas & LoCicero PL, attorneys for Defendant THE ASSOCIATED PRESS at

*clocicero@tlolawfirm.com* this 23rd day of April, 2018.

                    **LAW OFFICE OF ALEX S. HORNIK, P.A.**
                    Attorney for Plaintiffs
                    1900 S. Treasure Drive, Suite #9-H
                    North Bay Village, Florida 33141
                    Telephone:      (786) 275-6850
                    Facsimile:      (786) 453-2360
                    Primary email : ahornik@horniklaw.com
                    Secondary email : alexhornik1@gmail.com

                    By: /s/ Alex S. Hornik, Esq.
                        FBN 743895

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NUMBER: 18-007998 CA (01)

**NEIMAN NIX** and
**DNA SPORTS PERFORMANCE LAB, INC.,**
a Florida corporation,

     Plaintiffs,

vs.

**ESPN, INC.,** a Connecticut corporation,
**THE ASSOCIATED PRESS, INC.** a New York
nonprofit cooperative, and **USA TODAY
INTERNATIONAL CORPORATION,**
a Delaware corporation.

     Defendants.

_____/

### NOTICE OF COMMENCEMENT OF ACTION AND REQUEST FOR WAIVER OF SERVICE OF PROCESS

VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED

     Plaintiffs, NEIMAN NIX and DNA SPORTS PERFORMANCE LAB, INC., by and through their

undersigned attorney, hereby give notice to:

**THE ASSOCIATED PRESS**
(incorrectly referred to above as "THE ASSOCIATED PRESS, INC., a New York cooperative")
Registered Agent: Corporation Service Company
80 State Street
Albany, NY 12207-2543

of this commencement of this action in the Circuit Court of the Eleventh Judicial Circuit of Florida in and

for Miami-Dade County.

     Plaintiffs hereby request pursuant to Rule 1.070(i), Florida Rules of Civil Procedure that Defendant

THE ASSOCIATED PRESS waive formal service of the enclosed Plaintiffs' "Complaint and Demand for

Jury Trial" and "Summons" in this matter by executing the "Waiver of Service of Process" form below

confirming acceptance of said complaint and summons and returning it to Plaintiff's undersigned attorney

of record in the pre-addressed, stamped envelope provided herein.

Acceptance of service of the complaint and summons as herein requested does not thereby waive any objection to the venue or to the jurisdiction of the court over the person of the defendant.

Defendant THE ASSOCIATED PRESS shall have twenty (20) days from the receipt of this notice and request for waiver in which to return the signed "Waiver of Service of Process" form to Plaintiff's undersigned attorney of record, failing which, the Court shall impose the costs subsequently incurred by Plaintiffs in effecting service on the Defendant THE ASSOCIATED PRESS unless good cause for the failure is shown.

If said "Waiver of Service of Process" form is timely returned, then Defendant THE ASSOCIATED PRESS shall have 60 days from the receipt of this notice and request for waiver to respond to the enclosed complaint. If Defendant THE ASSOCIATED PRESS should be formally served with the complaint and summons, then in that case, Defendant THE ASSOCIATED PRESS shall have 20 days to respond to the complaint. For purposes of computing any time prescribed or allowed by these rules, service of process shall be deemed effected 20 days before the time required to respond to the complaint.

## **CERTIFICATE OF MAILING**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was emailed to Carol Jean LoCicero, Esq, Thomas & LoCicero PL, attorneys for Defendant THE ASSOCIATED PRESS at *clocicero@tlolawfirm.com* this 21ˢᵗ day of April, 2018.

**LAW OFFICE OF ALEX S. HORNIK, P.A.**
Attorney for Plaintiffs
1900 S. Treasure Drive, Suite #9-H
North Bay Village, Florida 33141
Telephone:          (786) 275-6850
Facsimile:          (786) 453-2360
Primary email : ahornik@horniklaw.com
Secondary email : alexhornik1@gmail.com

By: /s/ Alex S. Hornik, Esq.
    FBN 743895

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NUMBER: 18-007998 CA (01)

**NEIMAN NIX** and
**DNA SPORTS PERFORMANCE LAB, INC.,**
a Florida corporation,

     Plaintiffs,

vs.

**ESPN, INC.**, a Connecticut corporation,
**THE ASSOCIATED PRESS, INC.** a New York
nonprofit cooperative, and **USA TODAY**
**INTERNATIONAL CORPORATION,**
a Delaware corporation.

     Defendants.

_____/

## WAIVER OF SERVICE OF PROCESS

Defendant, **THE ASSOCIATED PRESS**, a New York nonprofit corporation, (incorrectly referred

to above as "THE ASSOCIATED PRESS, INC., a New York nonprofit cooperative") by and through its

undersigned authorized representative, hereby acknowledges the receipt of service of Plaintiffs'

"Complaint and Demand for Jury Trial" and "Summons" in the above-entitled matter and waives formal

service of process, pursuant to Rule 1.070(i), Florida Rules of Civil Procedure.

**THE ASSOCIATED PRESS**

By: _____

Title: _Asst. General Counsel_

Dated: _4/23/18_

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NUMBER: 18-007998 CA (01)

**NEIMAN NIX** and
**DNA SPORTS PERFORMANCE LAB, INC.,**
a Florida corporation,

     Plaintiffs,

vs.

**ESPN, INC.,** a Connecticut corporation,
**THE ASSOCIATED PRESS, INC.** a New York
nonprofit cooperative, and **USA TODAY
INTERNATIONAL CORPORATION,**
a Delaware corporation,

     Defendants.

_____/

## NOTICE OF COMMENCEMENT OF ACTION AND REQUEST FOR WAIVER OF SERVICE OF PROCESS

VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED

     Plaintiffs, NEIMAN NIX and DNA SPORTS PERFORMANCE LAB, INC., by and through their

undersigned attorney, hereby give notice to:

**DEFENDANT ESPN, INC.**
Registered Agent: ESPN Enterprises, Inc.
ESPN Plaza, Attn: Legal Dept.
Bristol, CT 06010-7454

of this commencement of this action in the Circuit Court of the Eleventh Judicial Circuit of Florida in and

for Miami-Dade County.

     Plaintiffs hereby request pursuant to Rule 1.070(i), Florida Rules of Civil Procedure that Defendant

ESPN, INC. waive formal service of the enclosed Plaintiffs' "Complaint and Demand for Jury Trial" and

"Summons" in this matter by executing the "Waiver of Service of Process" form below confirming

acceptance of said complaint and summons and returning it to Plaintiff's undersigned attorney of record

in the pre-addressed, stamped envelope provided herein.

Acceptance of service of the complaint and summons as herein requested does not thereby waive any objection to the venue or to the jurisdiction of the court over the person of the defendant.

Defendant ESPN, INC. shall have twenty (20) days from the receipt of this notice and request for waiver in which to return the signed "Waiver of Service of Process" form to Plaintiff's undersigned attorney of record, failing which, the Court shall impose the costs subsequently incurred by Plaintiffs in effecting service on the Defendant ESPN, INC unless good cause for the failure is shown.

If said "Waiver of Service of Process" form is timely returned, then Defendant ESPN, INC. shall have 60 days from the receipt of this notice and request for waiver to respond to the enclosed complaint. If Defendant ESPN, INC. should be formally served with the complaint and summons, then in that case, Defendant ESPN, INC. shall have 20 days to respond to the complaint. For purposes of computing any time prescribed or allowed by these rules, service of process shall be deemed effected 20 days before the time required to respond to the complaint.

## CERTIFICATE OF MAILING

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was emailed to Carol Jean LoCicero, Esq, Thomas & LoCicero PL, attorneys for Defendant ESPN, Inc. at *clocicero@tlolawfirm.com* this 12th day of April, 2018.

**LAW OFFICE OF ALEX S. HORNIK, P.A.**
Attorney for Plaintiffs
1900 S. Treasure Drive, Suite #9-H
North Bay Village, Florida 33141
Telephone:          (786) 275-6850
Facsimile:          (786) 453-2360
Primary email : ahornik@horniklaw.com
Secondary email : alexhornik1@gmail.com

By: /s/ Alex S. Hornik, Esq.
    FBN 743895

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NUMBER: 18-007998 CA (01)

**NEIMAN NIX** and
**DNA SPORTS PERFORMANCE LAB, INC.,**
a Florida corporation,

     Plaintiffs,

vs.

**ESPN, INC.**, a Connecticut corporation,
**THE ASSOCIATED PRESS, INC.** a New York
nonprofit cooperative, and **USA TODAY
INTERNATIONAL CORPORATION,**
a Delaware corporation.

     Defendants.

_____/

## WAIVER OF SERVICE OF PROCESS

     Defendant, **DEFENDANT ESPN, INC.**, a Connecticut corporation, by and through its undersigned

authorized representative, hereby acknowledges the receipt of service of Plaintiffs' "Complaint and

Demand for Jury Trial" and "Summons" in the above-entitled matter and waives formal service of process,

pursuant to Rule 1.070(i), Florida Rules of Civil Procedure.

**DEFENDANT ESPN, INC.**

By: _____

Title: _attorney w/ Thomas & Lolicars,_

Dated: _4/24/18_  _counsel for ESPN_

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NUMBER: 18-007998 CA (01)

NEIMAN NIX and
DNA SPORTS PERFORMANCE LAB, INC.,
a Florida corporation,

      Plaintiffs,

vs.

ESPN, INC., a Connecticut corporation,
THE ASSOCIATED PRESS, INC. a New York
nonprofit cooperative, and USA TODAY
INTERNATIONAL CORPORATION,
a Delaware corporation.

      Defendants.

_____/

### NOTICE OF COMMENCEMENT OF ACTION AND REQUEST FOR WAIVER OF SERVICE OF PROCESS

VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED

      Plaintiffs, NEIMAN NIX and DNA SPORTS PERFORMANCE LAB, INC., by and through their

undersigned attorney, hereby give notice to:

**USA TODAY**
a division of **GANNETT SATELLITE INFORMATION NETWORK, LLC**
(incorrectly referred to above as "USA TODAY
INTERNATIONAL CORPORATION")
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

of this commencement of this action in the Circuit Court of the Eleventh Judicial Circuit of Florida in and

for Miami-Dade County.

      Plaintiffs hereby request pursuant to Rule 1.070(i), Florida Rules of Civil Procedure that Defendant

USA TODAY waive formal service of the enclosed Plaintiffs' "Complaint and Demand for Jury Trial" and

"Summons" in this matter by executing the "Waiver of Service of Process" form below confirming acceptance of said complaint and summons and returning it to Plaintiff's undersigned attorney of record in the pre-addressed, stamped envelope provided herein.

Acceptance of service of the complaint and summons as herein requested does not thereby waive any objection to the venue or to the jurisdiction of the court over the person of the defendant.

Defendant USA TODAY shall have twenty (20) days from the receipt of this notice and request for waiver in which to return the signed "Waiver of Service of Process" form to Plaintiff's undersigned attorney of record, failing which, the Court shall impose the costs subsequently incurred by Plaintiffs in effecting service on the Defendant USA TODAY unless good cause for the failure is shown.

If said "Waiver of Service of Process" form is timely returned, then Defendant USA TODAY shall have 60 days from the receipt of this notice and request for waiver to respond to the enclosed complaint. If Defendant USA TODAY should be formally served with the complaint and summons, then in that case, Defendant USA TODAY shall have 20 days to respond to the complaint. For purposes of computing any time prescribed or allowed by these rules, service of process shall be deemed effected 20 days before the time required to respond to the complaint.

## CERTIFICATE OF MAILING

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was emailed to Carol Jean LoCicero, Esq, Thomas & LoCicero PL, attorneys for Defendant USA TODAY at *clocicero@tlolawfirm.com* this 21ˢᵗ day of April, 2018.

**LAW OFFICE OF ALEX S. HORNIK, P.A.**
Attorney for Plaintiffs
1900 S. Treasure Drive, Suite #9-H
North Bay Village, Florida 33141
Telephone:            (786) 275-6850
Facsimile:            (786) 453-2360
Primary email : ahornik@horniklaw.com
Secondary email : alexhornik1@gmail.com

By: /s/ Alex S. Hornik, Esq.
      FBN 743895

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NUMBER: 18-007998 CA (01)

NEIMAN NIX and
DNA SPORTS PERFORMANCE LAB, INC.,
a Florida corporation,

     Plaintiffs,

vs.

ESPN, INC., a Connecticut corporation,
THE ASSOCIATED PRESS, INC. a New York
nonprofit cooperative, and USA TODAY
INTERNATIONAL CORPORATION,
a Delaware corporation.

     Defendants.

_____/

## WAIVER OF SERVICE OF PROCESS

     Defendant **USA TODAY**, a division of **GANNETT SATELLITE INFORMATION**

**NETWORK, LLC**, a Delaware corporation (incorrectly referred to above as "USA TODAY

INTERNATIONAL CORPORATION"), by and through its undersigned authorized representative, hereby

acknowledges the receipt of service of Plaintiffs' "Complaint and Demand for Jury Trial" and "Summons"

in the above-entitled matter and waives formal service of process, pursuant to Rule 1.070(i), Florida Rules

of Civil Procedure.

                    **USA TODAY**, a division of **GANNETT SATELLITE**
                    **INFORMATION NETWORK, LLC**

                    By: _____

                    Title: _attorney of Thomas & LoCicero, Counsel for USA Today_

                    Dated: _4/24/18_

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUITI
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

NEIMAN NIX and DNA SPORTS
PERFORMANCE LAB, INC.,

       Plaintiffs,

v.                                               Case No. 18-007998 CA (01)

ESPN, INC., et al.,

       Defendants.

_____/

## NOTICE OF APPEARANCE

     NOTICE IS HEREBY GIVEN that Carol Jean LoCicero and Allison Kirkwood Simpson

of the law firm of Thomas & LoCicero PL, hereby enter their appearance as counsel for

Defendants THE ASSOCIATED PRESS, INC. ("AP"); ESPN, INC. ("ESPN"); and USA

TODAY a division of GANNETT SATELLITE INFORMATION NETWORK, LLC ("USA

Today")[1] in the this matter. Copies of all future pleadings, papers, and correspondence should be

sent to the undersigned attorneys at the address and email addresses listed below.

                Carol Jean LoCicero
                Allison Kirkwood Simpson
                Thomas & LoCicero PL
                601 South Boulevard
                Tampa, FL 33606

                Primary E-Mail Addresses:    clocicero@tlolawfirm.com
                                                  asimpson@tlolawfirm.com

                Secondary E-Mail Addresses:   tgilley@tlolawfirm.com
                                                  dlake@tlolawfirm.com

Dated: May 24, 2018.

                              Respectfully submitted,

_____

[1] Defendant USA Today is incorrectly referred to in the Complaint as USA TODAY INTERNATIONAL
CORPORATION. As noted herein, the correct entity is USA TODAY, a division of GANNETT
SATELLITE INFORMATION NETWORK, LLC.

THOMAS & LoCICERO PL

*/s/Carol Jean LoCicero*
Carol Jean LoCicero
  Florida Bar No. 603030
  clocicero@tlolawfirm.com
Allison Kirkwood Simpson
  Florida Bar No. 86036
  asimpson@tlolawfirm.com
601 South Boulevard
Tampa, FL 33606
Telephone: (813) 984-3060
Facsimile: (813) 984-3070

Attorneys for The Associated Press, Inc., ESPN,
Inc., and USA Today a division of Gannett Satellite
Information Network, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was furnished on the 24th

day of May, 2018, via electronic service from Florida Court E-Filing portal to Alex S. Hornik,

Esq., LAW OFFICE OF ALEX S. HORNIK, P.A., 1900 S. Treasure Drive, Suite #9-H, North

Bay Village, Florida 33141 (ahornik@horniklaw.com; alexhornik1@gmail.com).

*/s/ Carol Jean LoCicero*
Attorney

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUITI
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

**NEIMAN NIX and DNA SPORTS
PERFORMANCE LAB, INC.,**

      **Plaintiffs,**

**v.**                                                                 **Case No. 18-007998 CA (01)**

**ESPN, INC., et al.,**

      **Defendants.**

_____/

## DEFENDANTS' MOTION TO STAY DISCOVERY

Pursuant to Florida Rule of Civil Procedure 1.280(c), Defendants THE ASSOCIATED

PRESS, INC. ("AP"); ESPN, INC. ("ESPN"); and USA TODAY a division of GANNETT

SATELLITE INFORMATION NETWORK, LLC ("USA Today")[1] (collectively "Defendants")

move the Court for a stay of discovery in this case until the Court rules on the Defendants'

forthcoming Motion to Dismiss the Complaint. In support of this motion, Defendants state:

### Background

1.    Plaintiff Neiman Nix and his company, DNA Sports Performance Lab, Inc.

("DNA"), have sued Defendants for Defamation (Count 1), Intentional Infliction of Emotional

Distress (Count 2), and for Temporary and Permanent Injunction (Count 3) based on news

stories published by AP, ESPN and USA Today on July 14, 2016.

2.    The news stories describe a 2016 lawsuit Nix filed against Major League Baseball

("MLB") for tort claims essentially arising over whether a certain substance (bioidentical insulin

like growth factor, also called IGF-1) is banned by MLB.  The Defendants reported on Nix's

---

[1] Defendant USA Today is incorrectly referred to in the Complaint as USA TODAY INTERNATIONAL
CORPORATION. As noted herein, the correct entity is USA TODAY, a division of GANNETT
SATELLITE INFORMATION NETWORK, LLC.

MLB complaint. Nix takes issue with the following statement that appeared in the news stories: "The suit admits Nix and his company used bioidentical insulin like growth factor (IGF-1), which is derived from elk antlers and is on baseball's list of banned substances." The articles, based on an AP wire service story, are located at

http://www.espn.com/mlb/story/_/id/17078668/major-league-baseball-sued-dna-sports-performance-lab-owner-alleged-illegal-hacking-biogenesis-investigation, and

https://www.usatoday.com/story/sports/mlb/2016/07/14/training-clinic-owner-sues-mlb-alleging-illegal-hacking/87096478/.

3.      On April 24, 2018, Plaintiffs served Defendants with discovery, including requests for production of documents, requests for admission, and interrogatories. The discovery is attached to this motion as **Exhibits 1**, **2**, and **3**, respectively.

4.      The requests are largely focused on whether MLB bans IGF-1. <u>See</u> Exhibits 1, 2, and 3.

5.      Defendants are due to respond to the Complaint on June 22, 2018. The arguments that Defendants intend to raise in the Motion to Dismiss will be legal and dispositive of the case.

<u>**Stay of Discovery**</u>

6.      For purposes of the upcoming motion to dismiss, Defendants and the Court must accept as true the facts alleged in the Complaint. As such, discovery from Defendants would not assist Plaintiffs in opposing the motion to dismiss.

7.      "A trial court has broad discretion in discovery matters." <u>Zirkelbach Const., Inc. v. Rajan</u>, 93 So. 3d 1124, 1127 (Fla. 2d DCA 2012).

8.      Ordinary notions of judicial economy and efficiency counsel in favor of a stay of discovery pending adjudication of a dispositive motion to dismiss. <u>Deltona Corp. v. Bailey</u>, 336

So.2d 1163, 1169-70 (Fla. 1976) ("postponing discovery for a short period of time pending

determination of material, outstanding motions may be within the discretion of the trial court");

Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1368 (11th Cir. 1997) ("If the district court

dismisses a nonmeritorious claim before discovery has begun, unnecessary costs to the litigants

and to the court system can be avoided").

9.      First Amendment interests, which courts have a duty to consider when

supervising discovery in libel cases, also support a stay.  Herbert v. Lando, 441 U.S. 153, 179-80

(1979) (Powell, J., concurring).  This is because litigation itself, including discovery, may

operate to chill protected speech.  Id. at 180 (Powell, J., concurring); McBride v. Merrell Dow

and Pharm., Inc., 717 F.2d 1460, 1466-67 (D.C. Cir. 1983) ("Libel suits, if not carefully handled,

can threaten journalistic independence.  Even if many actions fail, the risks and high costs of

litigation may lead to undesirable forms of self-censorship."); Kotlikoff v. Community News,

444 A.2d 1086, 1088 (N.J. 1982) ("The threat of prolonged and expensive litigation has a real

potential for chilling journalistic criticism and comment upon public figures and public affairs.").

10.     Courts have routinely forbidden discovery in defamation cases until the

determination of threshold matters.  See Farah v. Esquire Magazine, Inc., 863 F. Supp. 2d 29, 35

n.7 (D.D.C. 2012) (noting that the "Court granted Defendants' motion to stay discovery pending

a decision on their motion to dismiss); White v. Fraternal Order of Police, 909 F.2d 512, 517

(D.C. Cir. 1990) (granting stay of discovery in invasion of privacy and defamation action);

Moldea v. New York Times Co., 137 F.R.D. 1, 2 (D.D.C. 1990) (granting stay of discovery in

libel action in light of "significant First Amendment issues" and other considerations); see also

Matthews v. City of Maitland, 923 So. 2d 591, 595 (Fla. 5th DCA 2006) (quashing orders

compelling disclosures of anonymous contributors to web site raising funds to challenge city

zoning decision); Bruno & Stillman v. Globe Newspaper Co., 633 F.2d 583, 597 (1st Cir. 1980) ("As a threshold matter, the court should be satisfied that a claim is not frivolous, a pretense for using discovery powers in a fishing expedition."); Cervantes v. Time, Inc., 464 F.2d 986, 993 (8th Cir. 1972) (to "routinely grant motions seeking compulsory disclosure of anonymous news sources without first inquiring into the substance of the libel allegation would utterly emasculate the fundamental principles that underlay the line of cases articulating the constitutional restrictions to be engrafted upon the enforcement of State libel laws.").

11.     A stay of discovery is also supported by Florida's recently amended anti-SLAPP statute, which was designed to provide an "expeditious resolution" to certain defamation actions. Fla. Stat. § 768.295(4).  To be sure, "[e]ffective anti-SLAPP statutes" exist to "make it easier and cheaper to terminate such lawsuits at early stages."  Samuel Morley, Florida's Expanded Anti-SLAPP Law: More Protection for Targeted Speakers, 90 Fla. B.J. 17-18 (Nov. 2016).

12.     For the laudatory effects of Florida's newly-enacted anti-SLAPP legislation to work, courts must enforce protections – such as preventing invasive discovery.  Id. at 19.  Thus, in the context of a defamation action such as this one, a plaintiff should not compel the disclosure of journalistic work product prematurely.

13.     If Defendants are right that Plaintiffs cannot state a valid claim, discovery would be wasteful, burdensome, intrusive, and pointless.  It would also undermine Florida's anti-SLAPP law.  If Defendants are wrong, then Plaintiffs would later have an opportunity to take appropriate discovery.

14.     Courts have found that "any stay of discovery or trial should be for a reasonable and finite time, and . . . the least intrusive means of accommodating the need for delay should be used."  State v. Antonucci, 590 So. 2d 998, 1000 (Fla. 5th DCA 1991) (discussing standard for

stays in civil and criminal matters).  Defendants are asking only for a stay of discovery through this Court's ruling on its motion to dismiss.  Such a limited stay would comply with the law.

15.     In the alternative, Defendants request an extension of time to respond to Plaintiffs' discovery requests.  This Court may grant such a motion pursuant to Rule 1.090 of the Florida Rules of Civil Procedure.  Plaintiffs will not be prejudiced by an extension of time until this Court rules upon the Defendants' Motion to Dismiss.  By contrast, Defendants will be severely prejudiced if they are required to respond to discovery requests—that are in any event more appropriately directed to MLB in Nix's case involving MLB—prior to the Court's ruling on the Motion to Dismiss due not only to the expense and burden involved in responding to Plaintiff's numerous requests, but also the imposition on their First Amendment rights.

16.     Defendants asked Plaintiffs to consent to the requested stay, but Plaintiffs have expressed intent to take early discovery in this case.

Dated:  May 24, 2018.

Respectfully submitted,

THOMAS & LoCICERO PL

*/s/Carol Jean LoCicero*
Carol Jean LoCicero
   Florida Bar No. 603030
   clocicero@tlolawfirm.com
Allison Kirkwood Simpson
   Florida Bar No. 86036
   asimpson@tlolawfirm.com
601 South Boulevard
Tampa, FL 33606
Telephone: (813) 984-3060
Facsimile:  (813) 984-3070

Attorneys for The Associated Press, Inc., ESPN, Inc., and USA Today a division of Gannett Satellite Information Network, LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was furnished on the 24th

day of May, 2018, via electronic service from Florida Court E-Filing portal to Alex S. Hornik,

Esq., LAW OFFICE OF ALEX S. HORNIK, P.A., 1900 S. Treasure Drive, Suite #9-H, North

Bay Village, Florida 33141 (ahornik@horniklaw.com; alexhornik1@gmail.com).


*/s/ Carol Jean LoCicero*
Attorney

# EXHIBIT 1

THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NUMBER: 18-007998 CA (01)

**NEIMAN NIX** and
**DNA SPORTS PERFORMANCE LAB, INC.**,
a Florida corporation,

    Plaintiff,

vs.

**ESPN, INC.**, a Connecticut corporation,
**THE ASSOCIATED PRESS, INC.** a New York
nonprofit cooperative, and **USA TODAY
INTERNATIONAL CORPORATION,**
a Delaware corporation.

    Defendants.

_____/

## PLAINTIFFS' FIRST REQUEST TO PRODUCE
### (To All Defendants)

    **COME NOW** the PLAINTIFFS, by and through their undersigned attorney, and pursuant to Rule 1.350 of the Florida Rules of Civil Procedure, requests that each DEFENDANT produce the following documents and other papers at the Law Office of Alex S. Hornik, P.A., 1900 S. Treasure Drive, Suite #9-H, North Bay Village, Florida 33141, within the time prescribed under the Florida Rules of Civil Procedure, and permit PLAINTIFFS to inspect and copy these documents.

    **"Documents"** shall mean any correspondence, writing, computer-stored, computer-generated, electronic, or graphic material or any copy of any writing, electronic or graphic material in your possession, custody, care, or control pertaining to any subject, involved in this proceeding. This includes but is not limited to, the original of any correspondence, paper, book, pamphlet, periodical, photograph, object, microfilm, microfiche, note, sound recording, sales pamphlets, materials, or sales information, or any other data compilation from which information can be obtained within the time prescribed under the Florida Rules of Civil Procedure:

## DOCUMENTS REQUESTED

1.     Any and all documents, correspondence, memoranda, emails, text-messages, or other written communications between any of the parties to this case, mentioning, referring to, or pertaining to any of the issues, allegations, or subject matter of this case.

**EXHIBIT 1**

2.   Any and all documents, correspondence, memoranda, emails, text-messages or other written communications between any of the parties to this case and any person or entity not a party to this case mentioning, referring to, or pertaining to any of the issues, allegations, or subject matter of this case.

3.   Any and all internal documents, correspondence, memoranda, emails, text-messages or other written communications of each DEFENDANT herein mentioning, referring to, or pertaining to any of the issues, allegations, or subject matter of this case.

4.   Any and all documents, records, correspondence or other writings supporting, refuting, mentioning, or pertaining to the following statements:

    A.   Bioidentical insulin like growth factor (IGF-1) is on MLB's list of banned substances.

    B.   Bioidentical insulin like growth factor (IGF-1) is derived from elk antlers and is on MLB's list of banned substances.

    C.   Plaintiff Nix admitted that in his 2016 lawsuit against MLB that his company used Bioidentical insulin like growth factor (IGF-1) which is derived from elk antlers and is on MLB's list of banned substances.

5.   Any and all documents, records, correspondence or other writings supporting, refuting, mentioning, or pertaining to Major League Baseball's position on the use of deer or elk antler supplements by its players.

6.   Any and all documents, records, correspondence or other writings which each DEFENDANT relied on as the basis for the statement, ""The suit admits Nix and his company used bioidentical insulin like growth factor (IGF-1), which is derived from elk antlers and is on baseball's list of banned substances."

7.   Any and all documents, records, correspondence or other writings evidencing, mentioning, or pertaining to each DEFENDANT's responses to PLAINTIFFS' First Set of Interrogatories and First Requests for Admissions filed concurrently herewith.

8.   Copies of any and all insurance policies in their entirety which insure any DEFENDANT for any legal liability to third parties for the year 2016.

9.   Any and all documents, correspondence, writings, or exhibits which DEFENDANT intends to introduce at the trial in this matter, whether for substantive, rebuttal, or impeachment purposes.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was emailed to Carol Jean LoCicero, Esq, Thomas & LoCicero PL, attorneys for Defendant THE ASSOCIATED PRESS at *clocicero@tlolawfirm.com* this 23rd day of April, 2018.

- Page 2 of 3 -

**LAW OFFICE OF ALEX S. HORNIK, P.A.**
Attorney for Plaintiff
1900 S. Treasure Drive, Suite #9-H
North Bay Village, Florida 33141
Telephone:          (786) 275-6850
Facsimile:          (786) 453-2360
Primary email : ahornik@horniklaw.com
Secondary email : alexhornik1@gmail.com

By: /s/ Alex S. Hornik, Esq.
    FBN 743895

# EXHIBIT 2

THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL   JURISDICTION   DIVISION

CASE NUMBER: _____

**NEIMAN NIX** and
**DNA SPORTS PERFORMANCE LAB, INC.,**
a Florida corporation,

      Plaintiff,

vs.

**ESPN, INC.,** a Connecticut corporation,
**THE ASSOCIATED PRESS, INC.** a New York
nonprofit cooperative, and **USA TODAY
INTERNATIONAL CORPORATION,**
a Delaware corporation.

      Defendants.

_____/

## PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS
### (To All Defendants)

      **COME NOW** the PLAINTIFFS, by and through their undersigned attorney, and pursuant to Rule

1.370 of the Florida Rules of Civil Procedure, requests that each DEFENDANT admit or deny the

following statements within the time prescribed under the Florida Rules of Civil Procedure:

1.     Defendant did not review Plaintiffs' complaint in the lawsuit to which the following statement refers before publishing the article containing it: "The suit admits Nix and his company used bioidentical insulin like growth factor (IGF-1), which is derived from elk antlers and is on baseball's list of banned substances."

2.     Bioidentical insulin like growth factor (IGF-1) is not on MLB's list of banned substances.

3.     Extracts from deer and elk antlers are not on MLB's list of banned substances.

4.     Plaintniff Nix never admitted in his 2016 lawsuit against MLB that his company used or sold any substance banned by MLB.

5.     Neither Plaintiff ever admitted having sold any substance banned by MLB

## CERTIFICATE OF SERVICE

**EXHIBIT 2**

CASE NUMBER:_____

    **I HEREBY CERTIFY** that a true and correct copy of the foregoing was forwarded to the process server for service on Defendants this ___ day of March, 2018.

                                           **LAW OFFICE OF ALEX S. HORNIK, P.A.**
                                               Attorney for Plaintiff
                                               1900 S. Treasure Drive, Suite #9-H
                                               North Bay Village, Florida 33141
                                               Telephone:      (786) 275-6850
                                               Facsimile:       (786) 453-2360
                                             Primary email : ahornik@horniklaw.com
                                           Secondary email : alexhornik1@gmail.com

                                           By: /s/ Alex S. Hornik, Esq.
                                                FBN 743895

# EXHIBIT 3

Case 1:18-cv-22208-JLU Document 1-2 Entered on FLSD Docket 06/04/2018 Page 58 of 62

THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NUMBER: 18-007998 CA (01)

**NEIMAN NIX** and
**DNA SPORTS PERFORMANCE LAB, INC.,**
a Florida corporation,

     Plaintiff,

vs.

**ESPN, INC.**, a Connecticut corporation,
**THE ASSOCIATED PRESS, INC.** a New York
nonprofit cooperative, and **USA TODAY
INTERNATIONAL CORPORATION,**
a Delaware corporation.

     Defendants.

_____/

## PLAINTIFFS' NOTICE OF SERVICE OF FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS

Plaintiff, **NEIMAN NIX**, by and through his undersigned attorney, hereby gives notice of the service of his First Set of Interrogatories on all Defendants pursuant to Rule 1.340 of the Florida Rules of Civil Procedure

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was emailed to Carol Jean LoCicero, Esq, Thomas & LoCicero PL, attorneys for Defendant THE ASSOCIATED PRESS at *clocicero@tlolawfirm.com* this 23rd day of April, 2018.

**LAW OFFICE OF ALEX S. HORNIK, P.A.**
Attorney for Plaintiffs
1900 S. Treasure Drive, Suite #9-H
North Bay Village, Florida 33141
Telephone:     (786) 275-6850
Facsimile:     (786) 453-2360
Primary email : ahornik@horniklaw.com
Secondary email : alexhornik1@gmail.com

By: /s/ Alex S. Hornik, Esq.
     FBN 743895

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL    JURISDICTION    DIVISION

CASE NUMBER: 18-007998 CA (01)

**NEIMAN NIX** and
**DNA SPORTS PERFORMANCE LAB, INC.,**
a Florida corporation,

     Plaintiff,

vs.

**ESPN, INC.**, a Connecticut corporation,
**THE ASSOCIATED PRESS, INC.** a New York
nonprofit cooperative, and **USA TODAY**
**INTERNATIONAL CORPORATION,**
a Delaware corporation.

     Defendants.

_____/

## PLAINTIFF' FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS

     Plaintiffs, NEIMAN NIX and DNA SPORTS PERFORMANCE LAB, INC., by and through his undersigned attorney, hereby propounds the following Interrogatories to all Defendants, to be answered within time thirty (30) days hereof.

     As used herein "person" means the full name, present or last known address (designating which) and telephone number. Any reference to the singular person, place, thing, or entity, including but not limited to, any partnership, corporation, firm, proprietorship, association, or governmental body, shall include the plural, as well as the singular, and the feminine as well as the masculine or neuter.

## INTERROGATORIES

1.    Identify by name, title, address, and telephone number the person(s) assisting in preparing the responses to these interrogatories.

2.    Describe with particularity the factual and legal basis for each and every defense which each Defendant has to the allegations of Plaintiff's Verified Complaint and Demand for Jury Trial ("Complaint").

**EXHIBIT 3**

3.      Describe in detail the factual and legal basis for each item of damage which Defendant is claiming against either Plaintiff in this action, whether raised as an affirmative claim, counterclaim, or setoff, and for each such item of damage, state the amount and the method of computing the amount of such item of damage, including any mathematical formula(s) used.

4.      Describe in detail all efforts made and sources consulted by each Defendant to check the accuracy of the statement, "The suit admits Nix and his company used bioidentical insulin like growth factor (IGF-1), which is derived from elk antlers and is on baseball's list of banned substances."

5.      List the names, addresses, and telephone numbers of all persons or entities claiming to have, or believed or known by each Defendant or their agents and attorneys to have any knowledge, information, or testimony concerning any of the issues, allegations, or subject matter of this lawsuit and describe the substance of each such person's knowledge, information, or testimony.

6.      State the names, titles, addresses, and telephone numbers for any experts whom each Defendant has retained or intend to retain in this case or whom each Defendant intends to call as witnesses at trial, and describe each such witness's qualification as an expert, the subject matter upon which the witness is intended to testify, the substance of the facts and opinions to which the witness is expected to testify, a summary of the grounds for each opinion, and state whether such experts have prepared any written reports.

7.      State the name, address and telephone number of each and every person or entity claiming to have, or believed or known by Defendant, or its agents and attorneys to have possession, custody, or control, or any documents, correspondence, memoranda, writings, records, demonstrative evidence, or tangible evidence supporting, refuting, mentioning, or pertaining to any fact, allegation, or issue involved in this case, and as to each such person or entity, describe in detail the particular item each such person has or claims to have.

8.      State the name, address, and telephone number of each and every person who has made any statement(s) or remark(s) concerning any issue, allegation, or subject matter of this lawsuit, the date, time, and place of statement, the substance of the statement, and the person(s) to whom such statement or remark was made.

**I understand that I am swearing or affirming under oath to the truthfulness of the answers to these interrogatories and that the punishment for knowingly making a false statement includes fines and/or imprisonment.**

Dated: _____     By:_____
                                            Print Name:_____
                                            Title: _____

STATE OF _____)
                          )ss
COUNTY OF _____)

        Acknowledged, sworn to, and subscribed to this day by _____, as

_____ of _____, to me known to be the person

described in and who executed the foregoing Answers to Interrogatories, and who produced his/her

_____ as identification.

        **WITNESS** my hand and official seal this_____ day of _____, 2018
.

                                            NOTARY PUBLIC
                                            Sign:_____
                                            Print:_____
                                            State of Florida at Large

My Commission Expires: