UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:18-cv-22208-UU

NIEMAN NIX and
DNA SPORTS PERFORMANCE LAB, INC.,

  Plaintiffs,

v.

ESPN, INC., *et al.*,

  Defendants.
_____/

## ORDER

  THIS CAUSE comes before the Court upon Defendants' Motions to Dismiss Plaintiffs' Complaint ("The Motions") (D.E. 10 and D.E. 11).

  THE COURT has considered the motions, the pertinent portions of the record and is otherwise fully advised in the premises.

## BACKGROUND

  The following allegations are taken from Plaintiff's Complaint (D.E. 1-2).

  This defamation action arises out of a news article published or republished by three media companies reporting on a lawsuit that Plaintiff Neiman Nix ("Nix") filed in the Southern District of New York. *See generally* D.E. 1-2.

  Nix is a former professional baseball player. *Id*. ¶ 8. In April 2012, he launched a "state-of-the-art sports science center" in Miami Beach, Florida, named DNA Sports Performance Lab, Inc. ("DNA"). *Id.* ¶ 13. DNA provided diagnostic sports training and fitness services in addition to selling health supplements. *Id.*

DNA sells a natural supplement derived from antler tissue naturally shed by elk. *Id.* ¶ 14. DNA claims that the supplement increases physical strength, enhances athletic performance, increases energy levels, retards the aging process, sharpens memory and concentration, rejuvenates the libido, and provides many other health benefits. *Id.* The active ingredient in these supplements is a naturally occurring compound called IGF-1. *Id.* ¶ 15.

In 2013, the MLB launched an investigation into the illegal sale of performance enhancing drugs to MLB players. *Id.* ¶ 16. This investigation targeted Nix along with other "anti-aging" clinics in Florida. *Id.* On July 14, 2016, Nix filed a tortious interference suit against the MLB in Federal Court for the Southern District of New York, Case No. 1:16-cv-05604, for harm to Nix's reputation resulting from the investigation. *Id.* ¶ 18. On the same day, Defendant AP published a news article about the lawsuit, and Defendants ESPN and USA Today republished it. *Id.* The articles all contained the following statement about Nix's tortious interference suit: "The suit admits Nix and his company used bioidentical insulin like growth factor (IGF-1), which is derived from elk antlers and is on baseball's list of banned substances." *Id.*

This statement gives rise to Plaintiffs' defamation claim. *Id.* ¶ 22. Plaintiffs allege that it is defamatory because it does not differentiate between natural and synthetic IGF-1. *Id.* The synthetic form of IGF-1 is a Schedule III illegal drug in the same category as cocaine and methamphetamine. *Id.* Because Defendants' statement does not distinguish between natural and synthetic forms of IGF-1, Plaintiffs allege that it implies that Nix and DNA sold illegal drugs, or legal drugs in an illegal manner. *Id.* ¶ 22-23. Further, Plaintiffs allege that Defendants' statement implies that Nix and DNA sold substances banned by MLB rules to MLB players, even if they were not controlled or illegal substances. *Id.* ¶ 22.

Plaintiffs also allege that the statement itself is false, and that the tortious interference complaint actually states: (1) naturally occurring, bio-identical IGF-1, extracted from the antlers of elk and deer, is not a controlled or illegal substance, (2) the use of naturally occurring, bio-identical IGF-1, extracted from the antlers of elk and deer, is not prohibited by MLB or MLB Player's Association, (3) naturally occurring, bio-identical IGF-1 is also found in milk, meat, fish, whey protein, and in every human body, (4) neither Nix nor DNA ever sold any extracts or compounds derived from elk or deer antlers to any MLB players, and (5) extracts from elk or deer antlers are not considered illegal by the U.S. Drug Enforcement Agency ("DEA") nor are these banned by the World Anti-Doping Agency ("WADA"). *Id.* ¶ 20-21.

On December 26, 2017, Plaintiffs demanded that Defendants AP and ESPN print a retraction of the article, but they refused because "IGF-1 appears at entry number 68 on MLB's 'Prohibitive Substance List'." *Id.* ¶ 31. In addition, MLB confirmed to Defendant AP that "all natural and bioidentical versions of any prohibited substances – including but not limited to IGF-1 – are considered banned." *Id.*

Plaintiffs allege that Defendants' statement has damaged Plaintiffs' reputations for integrity and honesty. *Id.* ¶ 23. They also allege damages in the form of past, present, and future losses of business contracts, income, profits, market value, opportunities, and relationships. *Id.* ¶ 42. Plaintiff Nix also alleges damages in the form of mental anguish, humiliation, and emotional distress. *Id.* ¶ 43.

Based on these allegations, Plaintiffs bring three claims against Defendants: (1) Defamation; (2) Intentional Infliction of Emotional Distress; and (3) Temporary and Permanent Injunction to remove and/or retract the article.

## **LEGAL STANDARD**

To state a claim, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." While the Court must consider the allegations contained in the plaintiff's complaint as true, this rule "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, the complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (*citing Twombly*, 550 U.S. at 555).

In practice, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw upon its judicial experience and common sense. *Id.* at 679.

## **ANALYSIS**

All Defendants move to dismiss the defamation claim for the following reasons: (1) it is barred by the statute of limitations; (2) it is barred by the fair report privilege; and (3) Plaintiffs cannot establish fault. Defendants move to dismiss the intentional infliction of emotional

distress claim because it violates Florida's single cause of action rule and is not based on outrageous conduct. Lastly, they move to dismiss the request for injunctive relief because it constitutes an unconstitutional prior restraint. Defendants ESPN and USA Today additionally assert the "wire service defense" in their motion to dismiss. D.E. 11.

I. **Defamation**

   A. **Choice of Law**

Defendant AP argues that New York law should apply to its affirmative defenses to defamation. D.E. 10. Defendants ESPN and USA Today incorporate the arguments made in AP's motion to dismiss, and therefore agree that New York law should apply. D.E. 11.

The Court is required to conduct a choice-of-law analysis where there is a true conflict between the laws of the states with an interest in the case. A true conflict exists when "two or more states have a legitimate interest in a particular set of facts in litigation and the laws of those states differ or would produce a different result." *Pycsa Panama, S.A. v. Tensar Earth Techs., Inc.*, 625 F. Supp. 2d 1198, 1219 (S.D. Fla. 2008), aff'd, 329 F. App'x 257 (11th Cir. 2009). A false conflict, by contrast, exists "'when the potentially applicable laws do not differ.'" *Fioretti v. Massachusetts Gen. Life Ins. Co.*, 53 F.3d 1228, 1234 n. 20 (11th Cir. 1995) (quoting Restatement (Second) of Conflict of Laws § 1 cmt. b (1971)).

As to the statute of limitations defense, there is a conflict. New York's statute of limitations is one year, while Florida's is two years. (NY CPLR 215(3)) (FLA STAT 95.11(4)(g)). The alleged defamation in this case occurred on July 14, 2016, when Defendants published the articles. D.E. 1-2 ¶ 18. Plaintiffs filed their complaint on March 13, 2018. D.E. 1-2. If New York law governs, Plaintiffs' defamation claim is time-barred as it was filed eight months after the statute of limitations elapsed. However, if Florida law governs, Plaintiffs' defamation

5

claim is permitted, as it was filed four months before the statute of limitations elapsed. Accordingly, the Court must conduct a choice-of-law analysis for the second affirmative defense.

There is also a conflict with respect to the fair report privilege. In Florida, the privilege is qualified; in New York, it is absolute. *Compare Woodard*, 616 So. 2d at 502, *with Cholowsky v. Civiletti*, 69 A.D.3d 110, 114 (N.Y. App. 2009). Accordingly, if New York law applies, the privilege may serve as a basis to dismiss the complaint at the pleading stage. *See, e.g.*, *Adelson v. Harris*, 973 F. Supp. 2d 467 (S.D.N.Y. 2013), aff'd, 876 F.3d 413 (2d Cir. 2017).

There is no conflict, however, as to the wire service defense. Both Florida and New York afford a special protection for those who re-publish news reports from reliable news sources. *See Layne v. Tribune Co.*, 146 So. 234, 238 (Fla. 1933); *Rakofsky v. Washington Post*, 39 Misc. 3d 1226(A), 971 N.Y.S.2d 74 (Sup. Ct. 2013) (citing *Karaduman v. Newsday, Inc.*, 51 N.Y.2d 530, 550 (1980)). The privilege is substantially identical in both jurisdictions, and so there is no conflict.

A federal court sitting in diversity must apply the conflict-of-laws rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). As a preliminary matter, the court must characterize the legal issue before it and determine whether it sounds in tort, contract, property law, etc. *Acme Circus Operating Co., Inc. v. Kuperstock*, 711 F.2d 1538, 1540 (11th Cir.1983). Once it has done so, the court determines the choice of law rule that the forum state applies to that type of issue. *Id*.

Here, the issues before the court are the applicability of two affirmative defense to defamation; these issues, therefore, arise in tort. With respect to issues in tort, Florida applies the "most significant relationship" test outlined in the Restatement (Second) of Conflict of Laws section 145. *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240

6

(11th Cir. 2007) (citing *Bishop v. Florida Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla. 1980)).

This test is applied "not to the collective sum of issues in dispute, but to each individual issue which arises in the case." *Judge v. Am. Motors Corp.*, 908 F.2d 1565, 1578 (11th Cir. 1990). "Thus the law of a foreign state may control one issue while the law of Florida controls another." *Id*. Section 145 provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>     (a) the place where the injury occurred,
>     (b) the place where the conduct causing the injury occurred,
>     (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>     (d) the place where the relationship, if any, between the parties is centered.
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (1971).

1. <u>The Place Where The Injury Occurred</u>

Plaintiffs' generally allege injuries both in New York, Florida, and more broadly in the "business community." D.E. 1-2 ¶ 23, 39. However, Plaintiffs' only specific injuries occurred in New York. They allege that the article was used against them in connection with a business agreement which, but for the alleged defamation, would have allowed Plaintiffs to expand their sports centers to three locations in Manhattan. D.E. 1-2 ¶ 29. Plaintiffs cite no specific instances of harm within Florida. Additionally, in the usual case of multistate defamation, there is "little reason in logic or persuasiveness to say that one state rather than another is the place of injury . . . ." Restatement (Second) of Conflicts of Laws § 145 cmt. 3 (1971). Here, the articles were published online and therefore accessible anywhere in the world. D.E. 1-2 ¶ 18.

7

Accordingly, this factor weighs somewhat in favor of applying New York law because an identifiable injury occurred there.

2. The Place Where the Conduct Occurred

As with the previous factor, the place where the conduct occurred is of "less significance" in cases of multistate defamation. Restatement § 145 cmt. e. Here, the articles were published online and therefore were viewable anywhere. Nevertheless, this factor weighs somewhat in favor of applying New York law because the decision to publish the original article was made by Defendant AP in New York. D.E. 10 at 9.

3. The Location of the Parties

This factor is of neutral weight because all parties are from different locations. Defendant AP is a New York corporation. D.E. 1-2 ¶ 3. Defendant ESPN is a Connecticut corporation. D.E. 1-2 ¶ 2. And Defendant USA Today is a Delaware corporation. D.E. 1-2 ¶ 4. Plaintiffs do not state their respective domiciles in the complaint.[1]

4. The Place Where the Parties' Relationship is Centered

This factor is also of neutral weight. The parties do not allege any relationship to one another besides the alleged defamation.

5. Other Considerations

As this Court discussed at length in *Gubarev, et al. v. BuzzFeed, Inc., et al*., affirmative defenses to defamation exist to protect speakers, not to provide Plaintiffs a remedy. *See generally*, *Alexksej Gubarev, et al. v. BuzzFeed, Inc., et al.*, Case No. 1:17-cv-60426-UU, ECF

---

[1] In an affidavit attached to Plaintiffs' response in opposition to Defendants' motion to dismiss, Plaintiff states that he has been domiciled in Florida at all relevant times including July 14, 2016. D.E. 17-1. As an initial matter, it is well established that a plaintiff cannot amend his complaint through a response to a motion to dismiss. *Burgess v. Religious Technology Center, Inc.*, 600 Fed. Appx. 657, 665 (11th Cir. 2015). But second, the Court is concerned that Plaintiff is being untruthful either to this Court or to the Southern District of New York, because in the complaint Plaintiff filed in the Southern District of New York, he alleges domicile in Texas. *See* D.E. 10-4. Regardless, even if Plaintiff was a resident of Florida, this factor would not outweigh the others.

No. 171. New York, therefore, has a stronger interest in determining the applicability of affirmative defenses where, as here, the decision to publish was made in New York. *See id.*

In sum, the Restatement factors weigh in favor of applying New York law, and so the Court will apply New York law to determine whether Plaintiffs' defamation claim is barred by the statute of limitations and the fair report privilege.

### B.     Application of the Affirmative Defenses to the Defamation Claim.

#### 1. Statute of Limitations

New York's statute of limitations for defamation claims is one year. (NY CPLR 215(3)). The statute of limitations begins to run "from the date of the first publication of the defamatory statement." *Boda v. Phelan*, 2012 WL 3241213 at *2 (E.D.N.Y. Aug. 6, 2012). Defendants published the statement at issue on July 14, 2016. D.E. 1-2 ¶ 18. Plaintiffs filed their complaint on March 13, 2018. D.E. 1-2. Plaintiff's claim is therefore time-barred, as it was filed eight months after the statute of limitations elapsed. Accordingly, Plaintiffs' defamation claim must be dismissed.

#### 2. Fair Report Privilege

The fair report privilege is codified in New York Civil Rights Law section 74, which reads:

> A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published.
>
> This section does not apply to a libel contained in any other matter added by any person concerned in the publication; or in the report of anything said or done at the time and place of such a proceeding which was not a part thereof.

The purpose of this statute is to protect reports of proceedings which are "made in the public interest." *Williams v. Williams*, 23 N.Y.2d 592, 599 (N.Y. 1969). The press acts as the

9

agent of the public, gathering and compiling diffuse information in the public domain.  The press also provides the public with the information it needs to exercise oversight of the government, and with information concerning the public welfare.  The fair report privilege exists to protect the press as it carries out these functions.  *See, e.g.*, *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 714 (4th Cir. 1991) (holding that the privilege exists so that the press is not punished for serving its basic function).

Where, as here, the parties have submitted the allegedly defamatory materials to the Court, the Court "may determine as a matter of law whether allegedly defamatory publications are 'fair and true' reports of official proceedings.'" *Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 457 (E.D.N.Y. 2013) (quoting *Fine v. ESPN, Inc.*, No. 12–CV–0836, 2013 WL 528468, at *3 (N.D.N.Y. Feb. 11, 2013)).  And in making this determination, "the language used [in the report] should not be dissected and analyzed with a lexicographer's precision." *Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co.*, 49 N.Y.2d 63, 68 (1979).

Here, the allegedly defamatory statement reads: "The suit admits Nix and his company used bioidentical insulin like growth factor (IGF-1), which is derived from elk antlers and is on baseball's list of banned substances." D.E. 1-2 ¶ 18. The suit referred to in this statement is Plaintiff's tortious interference suit filed in the Southern District of New York on July 13, 2016. *Id.* Plaintiff's complaint in that suit alleged, "[o]ne of the main ingredients used by Nix and DNA Sports Lab come [sic] from Bio-identical Insulin like Growth Factor ("IGF-1"), which is derived from elk antlers." D.E. 10-4 ¶ 40. Major League Baseball's list of banned substances, effective July 1, 2015, includes "Insulin-like Growth Factor (IGF-1), including all isomers of IGF-1 sometimes referred to as Mechano

Growth Factors," as number 68 on the list of prohibited performance enhancing substances. D.E. 10-5.[2] Based on these two statements, the reported statement at issue is substantially correct, and therefore falls within the protection of the fair report privilege.

### 3. Wire Service Defense

Both Florida and New York courts recognize that "a republisher may rely on the research of the original publisher, 'absent a showing that the republisher had, or should have had, substantial reasons to question the accuracy of the articles or the *bona fides* of the reporter.'" *See Rakofsky*, 971 N.Y.S.2d 74 (quoting *Karaduman v. Newsday, Inc.*, 51 N.Y.2d 530, 550 (1980)); *See Layne*, 146 So. at 238 (articulating the privilege in substantially the same fashion). In *Rakofsky*, the defendants republished direct quotes or summarized the content of a Washington Post article. *Id*. The Court held that the defendants were protected by the wire service defense because the Washington Post was "a reputable news agency" and its article was substantially accurate. *Id*. So too here. The Associated Press is a reputable news agency, and its article was a substantially accurate summary of judicial proceedings. Accordingly, under either New York or Florida law, Plaintiffs' claims against the republishers, ESPN, Inc. and USA Today, are barred by the wire service defense. *See id*. ("To the extent that defendants republished content from The Washington Post Articles, plaintiffs' claims for defamation are barred by the "republication" exception."); *Lane*, 146 So. at 239 ("No newspaper could afford to warrant the absolute authenticity of every item of its news, nor assume in advance the burden of specially verifying every item of news reported to it by established news gathering agencies, and continue to discharge with efficiency and promptness the demands of modern necessity for prompt publication, if publication is to be had at all.").

---

[2] The Court may take judicial notice of this document because it is central to Plaintiffs' claims, and Plaintiffs do not dispute its accuracy. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir.2002)

    4. <u>Defamation by Implication</u>

More importantly, however, the reports—by Plaintiffs' own admission—are true; in his complaint in the Southern District of New York, Nix did admit to selling IGF-1. D.E. 1-2 ¶ 22.  Plaintiffs attempts to plead around this problem by asserting that the articles are defamatory because they *imply* that Plaintiffs sold an illegal substance by not specifying that Plaintiff sold natural, not synthetic, IGF-1.  D.E. 1-2 ¶¶ 23, 37.  Whether a defendant's statement constitutes defamation by implication is a matter of law for the court to decide.  *Turner v. Wells*, 879 F.3d 1254, 1269 (11th Cir. 2018) (affirming dismissal at the motion to dismiss stage because the challenged statements were substantially true, even though the plaintiff challenged the implications to be drawn from them). Additionally, a statement does not become defamatory if it omits facts unless the omission renders the report untrue.  *Id*.  And lastly, courts afford news media defendants wide editorial discretion.  *Id*. ("[W]e hold that this argument fails in deference to the Defendants' editorial discretion in what to publish in their Report.") (citing *Perk v. Reader's Digest Ass'n*, 931 F.2d 408, 412 (6th Cir. 1991) ("[Publishers] have no legal obligation to present a balanced view of what led up to [the publicized event]."); *Janklow v. Newsweek, Inc.*, 759 F.2d 644, 648 (8th Cir. 1985) (holding Newsweek was not liable for omission of additional facts where the omission did not make what was published untrue)).

Here, Plaintiffs allege that the articles imply that Nix and DNA sold illegal drugs because they do not specify whether Plaintiffs sold synthetic or natural IGF-1. D.E. 1-2 ¶ 23. But as in *Turner* and *Janklow*, this omission does not render the report untrue.  Nix admitted to selling IGF-1, and it was a banned substance.  *Id*. ¶ 22.  Additionally, the

12

decision to omit the words "natural" or "synthetic" from the articles was an editorial decision that the Court may not disturb.  *See Turner*, 879 F.3d at 1270 (deferring to the media defendants' editorial discretion because "the law of defamation is concerned with whether a publisher reports a story <u>truthfully</u>, not generously.") (emphasis in original) (internal quotations omitted).

For these reasons Plaintiffs' defamation claim must be dismissed with prejudice. *See id*. at 1274.

## II.     <u>Intentional Infliction of Emotional Distress & Injunctive Relief</u>

Defendants move to dismiss Plaintiffs' intentional infliction of emotion distress claim on the grounds that Florida's single cause of action rule bars it.  They move to dismiss Plaintiffs' claim for injunctive relief on the grounds that it is an unconstitutional prior restraint.  Plaintiffs do not respond to these arguments and so concede them.  *See, e.g.*, *Anderson v. Branch Banking & Tr. Co.*, 119 F. Supp. 3d 1328, 1345 (S.D. Fla. 2015); *Slugocki v. U.S. By & Through Dep't of Labor, Office of Workers' Comp. Programs, Div. of Fed. Employees' Comp.*, 988 F.Supp. 1443, 1447 (S.D.Fla. 1997); *Hudson v. Norfolk S. Ry. Co.*, 209 F.Supp.2d 1301, 1324 (N.D.Ga.2001), (citing *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995) ("When a party fails to respond to an argument or otherwise address a claim [in a response to a motion to dismiss], the Court deems such argument or claim abandoned.")).

## **CONCLUSION**

For the reasons set forth above, it is hereby

ORDERED AND ADJUDGED that Defendants' Motions to Dismiss Plaintiff's Complaint (D.E. 10 & D.E. 11) are GRANTED. The complaint is DISMISSED WITH PREJUDICE.  It is further

ORDERED AND ADJUDGED that the case is CLOSED for administrative purposes. All hearings are CANCELLED; all other motions DENIED AS MOOT.

DONE AND ORDERED in Chambers, Miami, Florida, this 30th day of August, 2018.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

cc: counsel of record via cm/ecf